CLARENCE PRYOR v. THE STATE.

No. 15070.   Delivered April 6, 1932.

The opinion states the case.

*R. H. Forrester,* of Wheeler, *B. Y. Cummings,* of Kilgore, and *Reynolds & Heare,* of Shamrock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, fifteen years in the penitentiary.

Appellant was charged with the murder of his father-in-law. Growing out of alleged misconduct on the part of appellant, there had been a separation between him and his wife, and the property rights between the two seems to have been the subject of considerable dispute. There seems little question but there had grown up much feeling between appellant and the family of his wife, including her father. We see no good to come from setting out the facts at any great length. Several serious threats on the part of appellant toward deceased were in testimony. Appellant and some of his witnesses claimed that deceased had threatened harm to appellant. The two men met on the day of the fatal difficulty. Deceased, who was quite an old man, had been to a sand pile and was returning with a small bucket of sand in one hand when the two met, appellant being in his car. A short but heated interview resulted, according to appellant's testimony, in the deceased throwing some sand with one of his hands into the face of appellant, some of which the latter claimed got into his eyes. Claiming further that after throwing the sand deceased started into his bosom where appellant thought deceased might have a pistol, appellant reached up into the top of his car where he kept a pistol and with same fired at least two shots into the body of deceased, killing him.

Appellant complains of the refusal of his special charge No. 2 in which he sought to have the jury told: "If it reasonably appeared to the defendant, from his standpoint, that he was in danger of suffering serious bodily injury at the hands of the deceased by reason of sand being thrown in his eyes by the deceased, or if you have a reasonable doubt as to such matters, then you will acquit the defendant." This was on the weight of evidence, attempting to single out and give undue prominence to a matter as a defense, which was without evidence to support it. While appellant testified that before he shot deceased, the latter had thrown sand in his face, some of which got in his eyes and burned or stung, he nowhere testified that he killed deceased because he feared injury as a result of the sand throwing, nor is there such evidence from any other source. In his testimony appellant said: "I killed Dr. Guyton because he threw sand in my face and reached for a gun, and said he was going to kill me—that is the reason. I would not have killed him just for throwing said in my face. * * * He threw the sand into my face, like this,—he did that twice, and then started into his shirt bosom with his left hand, this way (indicating)—my eyes were burning from that sand, and he started into his shirt bosom, about along in here, * * * The gun was stuffed up there in the top of the car, and I reached up there over the bow to get the gun as Dr. Guyton started into his shirt with his left hand,—he had already started that move before I reached for my gun, and I thought he was going to kill me."

In another part of his testimony he said: "It scared me when he

threw that sand into my eyes, and from the talk he had made, and his starting after his gun—I revolved the matter over in my mind, that he was going for a gun, or thought he was, and I had mental faculty enough to reach up and get my gun and shoot him,—and I remember shooting him. I don't know how many times I shot him, and I don't know where he was hit, I just pointed the gun at his body, for it looked to me like he was fixing to kill me." The refusal of said special charge was not error.

Appellant's special charge No. 4 reflects an effort on his part to single out a particular act or thing and have it given in charge to the jury as entitling him to an acquittal. In the main charge of the court on self-defense the jury were told that if from the acts or conduct, or words coupled with acts, of deceased then done, uttered or manifested, or which had theretofore been uttered, done or manifested by deceased at any prior time,—it appeared to appellant, viewed from his standpoint, that deceased was making or was about to make an attack upon him (appellant) which might result in death or serious bodily injury to appellant, then he had the right to shoot and kill deceased. We think this covered appellant's rights based on apprehension of death or serious bodily injury from the sand throwing or movements of deceased to put his hand in his shirt. As a matter of fact it appeared that deceased had no pistol or weapon of any kind.

Special charge No. 6 joined three distinct issues in one requested charge, all of which issues were properly covered by and presented in the main charge. The trial court's charge on appellant's right to act upon apparent danger was both full and fair, and covered the words, acts and conduct of deceased at the time of or prior to said shooting.

Appellant also contends that the court's charge on self-defense, based in part at least on threats, was too restrictive in that it did not in paragraph sixteen thereof properly connect the law of self-defense with the law of threats, for that one may defend against acts or conduct, or words coupled with acts, in ordinary self-defense, while said charge did not allow the jury to look to the words of deceased immediately before the shooting in order to decide whether he was about to execute threats previously made. The trial judge in this part of his charge followed closely the language of article 1258, P. C., which requires that when prior threats are relied upon as a defense, there must be some act then done manifesting an intent to execute such threats. This court has often criticised trial courts for not following the language of said statute, and we take this occasion to commend the trial judge who sat in this case for his adherence to the rule referred to.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*